Argued and submitted April 12, reversed June 8, 2011

In the Matter of T. F.; K. F.; and R. F.,
Children.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Klamath County Circuit Court
0900299JV1, 0900299JV2, 0900299JV3;
Petition Number 1000146M;
A147231

259 P3d 957

Mary Shannon Storey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Kristen G. Williams, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

The juvenile court took jurisdiction over father's children, pursuant to ORS 419B.100(1)(c), on the ground that father's possession of pornography, including child pornography, endangered the children's welfare. Father appeals, arguing that the state failed to prove that his possession of pornography endangered the children's welfare. We agree and, accordingly, reverse.

We begin with the facts, which we state consistently with the juvenile court's factual findings and ultimate legal conclusion. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010). In August 2009, on the state's petition, the juvenile court took jurisdiction over father and mother's three children on the ground that they were "currently residing under a threat of harm for mental injury and neglect," due primarily to father's abusive treatment of mother. After that, mother and father divorced.

In March 2010, the state filed another petition, alleging additional bases for the juvenile court's jurisdiction over the children, including an allegation that the children were endangered because father had "displayed sexually inappropriate behaviors involving children." The juvenile court held a hearing on the petition in November 2010.

At the hearing, the state presented evidence that, in July 2009, mother brought two computers that belonged to her and father to the police for examination. She did so because she knew that father had stored adult pornography on the computers and because father had once told her that he had accidentally downloaded child pornography, but had erased it.

A police detective, Anderson, examined the data on the computers. He determined that one of the computers contained three still images and six videos of child pornography. The three still images were "thumbnails." "Thumbnails" are smaller, lower-resolution versions of full-size images; they help computer users recognize and organize full-size images on their computers. According to Anderson, when a computer user downloads a full-size image, both the full-size image and a thumbnail are stored on the computer. When the user

deletes the full-size image, the thumbnail remains in a thumbnail folder, but it cannot be enlarged without special software. Anderson found the child pornography thumbnails in a thumbnail folder; the full-size images had been deleted. Anderson used special software, which was not present on the parents' computer, to enlarge the thumbnails so that he could determine their contents.

The six videos of child pornography were stored in an "incomplete" folder, indicating that they had been downloaded, but the downloading process had not been completed. Anderson believed that the videos were downloaded using a peer-to-peer file-sharing program. According to Anderson, such programs download files in pieces. As each piece is downloaded, it is stored in an "incomplete" folder, where it remains until the rest of the pieces are downloaded. If the download process is interrupted—which can occur for a variety of reasons, including termination by the user—the downloaded pieces remain in the "incomplete" folder. If the process is completed, then the program moves the file to a "complete" or "downloaded" folder. Although the videos on the parents' computer were in the "incomplete" folder, they were accessible. Anderson was able to view all of them, at least partially.

Anderson testified that the still images and videos of child pornography on the parents' computer were downloaded in 2005 and last accessed in 2007. Anderson further testified that, although he could tell when the files were last accessed, he could not tell the nature of the access. He could not tell whether the files were "viewed, deleted, or [there was] some other activity with regard to [the] file[s]."[1]

A second computer expert, Young, was called as a witness by father. Like Anderson, Young testified that he believed that the three still images and six videos of child pornography were downloaded using a peer-to-peer file-sharing program in 2005 and that they were last accessed in 2007. Young further testified that the access in 2007 was likely an automated search. He explained that the images and videos were last accessed on the same date, between 2:00 and

---

[1] In March 2010, the police seized two more computers belonging to father, but Anderson testified that he did not find any child pornography on those computers.

4:00 a.m., along with "several thousand files of a wide variety * * * of types," indicating an automated activity, such as a virus scan. According to Young, the computer access records indicated that, although the still images and videos were accessed in 2007, no one viewed them at that time.

In addition to the still images and videos of child pornography, Anderson and Young found 300 to 400 images and videos of adult pornography.

Mother testified that there had always been a large amount of adult pornography on the computers. She testified that father downloaded the pornography; she did not. She also testified that, as mentioned, father once told her that he had accidentally downloaded child pornography, but had erased it. She never saw child pornography on the computers.

The state called a sexual offender treatment specialist, Gilbert, to testify about the risks that arise from the possession of pornography. Gilbert testified that repeated exposure to pornography can reduce a person's inhibitions; it can reduce "the threshold of actually acting on fantasy." According to Gilbert, repeated exposure to pornography allows a person to view others "more as objects * * * than as humans[,]" thereby "reduc[ing] them to * * * something less and easier to molest or easier to offend against." Thus, according to Gilbert, "there's an increased likelihood of sexual crime taking place when there's heavy use of pornography."

But, Gilbert emphasized, "I don't think we can say that just because someone [has] a particular image on a computer that they're therefore a * * * sexual offender." And, Gilbert continued, "I think it also probably needs to be noted that just because someone demonstrates arousal to a particular target population doesn't necessarily mean they're going to commit an offense or have committed an offense." When asked about the amount of pornography father downloaded, Gilbert said that it was "outside the norm" but that, "just because behavior lies outside the norm, it doesn't mean that a sexual crime is going to be committed."

Gilbert regarded the pornography father had downloaded as a "red flag." Gilbert was concerned by the amount

of pornography father had downloaded and the fact that it included child pornography. He testified that father posed a "potential risk" and "until we can rule out the risk * * * we have to assume there is a risk." Gilbert said that he would need more information to determine whether father posed an actual risk, including information about why and where father obtained the pornography, how recently and frequently he used it, and how he used it. That information would, according to Gilbert, "help clarify this situation."

After the presentation of the evidence at the hearing, the state moved to amend the petition, which, as mentioned, alleged that father had "displayed sexually inappropriate behaviors involving children." The state argued:

> "I think we can broaden this petition, Your Honor, to just say ['] has displayed sexually inappropriate behaviors[']  inclusive of everything, and that it does create a risk to the children * * *. And as far as whether it's an intentional download or an unintentional download, based on the evidence that's come forward, I don't believe it really matters."

Father responded that the state had failed to prove that he had intentionally possessed child pornography and that his possession of adult pornography was an insufficient basis for the juvenile court to take jurisdiction over the children. Father argued:

> "[T]he State's argument is, 'Well, let's back up and just talk about Mr. Gilbert and the volume of pornography here.' Your Honor, the things I heard Mr. Gilbert talk about were—let's rule it out. I submit that in court proceedings, we don't decide that we have a concern and we're going to rule something out; we have to have a finding. A finding that, in this particular case, because of this particular fact, that there's a threat of harm."

The juvenile court amended the petition to allege that father "possessed sexually inappropriate materials" that "place[d] the children under a threat of harm," and the court took jurisdiction over the children on that basis. The court explained:

> "Well, this is one of the more difficult cases, certainly, that has come before the Court in making a decision on whether

or not to take jurisdiction over the petition. Clearly, I have jurisdiction over these kids anyway.

"* * * * *

"*I think the kids were put at risk, based upon the fact that [the child pornography] was there and in their home and easily accessible to them,* and the fact that there's no disputing that [father] knew that it was on the computer. * * * He didn't delete it good enough. And that was his computer and he didn't go back and take care of it.

"And I think that all of that sexual stuff puts those kids at risk, especially considering what we know about those kids is that they're already at risk. * * * And Mr. Gilbert's testimony is very compelling to me, as far as how much of a risk they were actually put at by being in that environment.

"* * * * *

"*And somebody who possesses a computer full of pornography that, oh, by the way, accidentally or intentionally has some child porn on it, that causes me a huge amount of concern as to whether or not they're going to be a risk to children,* especially when I hear Mr. Gilbert saying, 'That's really a red flag to me as a treatment provider who's been providing sex offender treatment for 20 years.' "

(Emphasis added.)

Thus, the juvenile court concluded that it had jurisdiction over the children pursuant to ORS 419B.100(1)(c) because father's possession of pornography endangered them in two ways: (1) it created a risk that they would be exposed to pornography, and (2) it created a risk that father would sexually abuse them. On appeal, father assigns error to the court's conclusion, arguing that there was insufficient evidence that his possession of pornography endangered the children either (1) by creating a risk that they would be exposed to it or (2) by creating a risk that he would sexually abuse them. For the reasons explained below, we agree.

Under ORS 419B.100(1)(c), the juvenile court has "exclusive original jurisdiction" over any case involving a child "whose condition or circumstances are such as to endanger the welfare" of the child. "Endanger connotes exposure to

'danger,' which generally involves 'the state of being threatened with serious loss or injury[.]'" *State ex rel Dept. of Human Services v. Shugars*, 202 Or App 302, 321, 121 P3d 702 (2005) (quoting *Webster's Third New Int'l Dictionary* 573 (unabridged ed 2002)). Thus, for the juvenile court to have jurisdiction over a child pursuant to ORS 419B.100(1)(c), the child's condition or circumstances must give rise to a threat of serious loss or injury to the child. The threat must be current. *State v. S. T. S.*, 236 Or App 646, 654, 238 P3d 53 (2010) (the state must prove "that there is a *current* risk of harm and not simply that the child's welfare was endangered at some point in the past" (emphasis in original)). And, there must be a reasonable likelihood that the threat will be realized. *State ex rel Juv. Dept. v. Vanbuskirk*, 202 Or App 401, 405, 122 P3d 116 (2005) (reasoning that the "key inquiry in determining whether 'condition[s] or circumstances' warrant jurisdiction is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child").

As mentioned, in this case, the juvenile court took jurisdiction over the children pursuant to ORS 419B.100(1)(c), because, in its view, the children were endangered by father's possession of pornography for two reasons. But, as father argues, the evidence was legally insufficient to support either reason.

First, the juvenile court erred by concluding that it had jurisdiction over the children pursuant to ORS 419B.100(1)(c) on the ground that they might be exposed to the pornography. The state did not present any evidence that exposure to pornography would harm the children, in a way and to a degree, such that the court could take jurisdiction over them. Although we can imagine that an expert might be able to testify to that effect, the state did not present any such testimony. Furthermore, even assuming that exposure to pornography can be a basis for juvenile court jurisdiction over a child, the state failed to present evidence that, in this case, there was a current risk of such exposure for the children at the time of the hearing. The pornography was on computers that had been turned over to the police in July 2009—more than a year before the November 2010 hearing that resulted in the judgment at issue in this case—and there

was no evidence that father had possessed pornography since that time.

Second, the juvenile court erred by concluding that father himself posed a risk to his children as a result of his possession of pornography. The court relied on Gilbert's testimony. But, as described, Gilbert testified that he needed additional information to determine whether father posed an actual risk to his children. Gilbert emphasized that the fact that a person possesses pornography or engages in behavior relating to pornography that is outside the norm does not, in and of itself, mean that the person will commit a sexual offense. Accordingly, to determine whether a person who possesses pornography endangers the welfare of a child, Gilbert testified that he would need information about, for example, how recently and frequently the person used the pornography and what effects the use had on the person's thoughts and behavior.

That is understandable. The fact that a parent engages in behavior that could negatively affect his or her parenting does not necessarily mean that the behavior can serve as a basis for juvenile court jurisdiction over a child. *See, e.g.*, *C. Z.*, 236 Or App at 442-43 (parent's substance abuse was an insufficient basis for juvenile court jurisdiction over parent's child); *State ex rel Dept. of Human Services v. D. T. C.*, 231 Or App 544, 554-55, 219 P3d 610 (2009) (same).

For example, we can easily imagine that an expert could testify that alcohol use increases the likelihood that a parent will neglect or abuse his or her child. But, the fact that a parent uses alcohol cannot, in and of itself, be the basis for juvenile court jurisdiction over a child; there must be evidence that the parent's use of alcohol "endangers the welfare" of the children. ORS 419B.100(1)(c). In other words, there must be evidence that the parent's use of alcohol gives rise to a current threat of serious loss or injury to the child. *S. T. S.*, 236 Or App at 654; *Shugars*, 202 Or App at 321. Evidence of, *inter alia*, how recently and frequently the parent uses alcohol and the effects of that use on the parent's conduct would be necessary to determine whether the parent's alcohol use creates a "reasonable likelihood of harm to the welfare" of his or her child. *Vanbuskirk*, 202 Or App at 405. The same is

true, as Gilbert's testimony indicates, with respect to father's possession of pornography in this case. Father's possession of pornography may well be concerning, as Gilbert testified and the juvenile court concluded. But there is insufficient evidence, on this record, that it created a reasonable risk that father would harm the children.

Reversed.