In the Matter of H. D. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. F.,
*Appellant.*

Lane County Circuit Court
10342J;
Petition Number 10342J02;
A152179

299 P3d 599

Kimberlee Petrie Volm, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Senior Assistant Attorney General, argued the cause for the respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

The juvenile court entered jurisdictional and dispositional judgments related to mother's son, H. Mother appeals from the jurisdictional judgment, contending that the evidence in the record is insufficient to support jurisdiction under ORS 419B100(1)(c), on the basis that mother was unable or unwilling to meet or understand the medical and developmental needs of H, who had been diagnosed with autism. Mother also appeals from the dispositional judgment, assigning error to the provision ordering her to submit to urinalysis. As explained below, we affirm the jurisdictional judgment, and we reverse and remand the dispositional judgment with instructions to enter a dispositional judgment that does not require urinalysis.

The following facts are undisputed. The juvenile court asserted jurisdiction over H in 2010 based on mother's stipulation that she had a current diagnosis of severe attention deficit hyperactivity disorder, adjustment disorder with mixed anxiety, and depressed mood, and that those diagnoses posed a risk of harm to H.

The Department of Human Services (DHS) subsequently filed an amended petition for jurisdiction in which it asserted, as an additional basis for jurisdiction against mother, that the circumstances and conditions of H are such as to endanger his welfare as follows:

> "The child has been subject to threat of harm and/or neglect by the mother, in that the mother is unable and/or unwilling to meet the child's medical and developmental needs. The child has special needs and has been diagnosed with autism; the mother is unable and/or unwilling to understand, or demonstrate an understanding of, the child's specific needs to ensure his health and well-being."

Mother contested the amended petition.

At the jurisdictional hearing on the amended petition, the parties stipulated that, since the court had asserted jurisdiction over H, he had been diagnosed with autism and with severe impairments of expressive and receptive language, including delays in communication, cognitive skills,

and social skills. The parties also stipulated to the admission of a report by Hyslop, an autism specialist at Early Childhood CARES. In the report, Hyslop explained that, because of H's developmental disabilities, he receives speech therapy and attends an autism class. She further explained that the focus of the autism class is to work with parents and caregivers in understanding the learning style of a child with H's disabilities and to help the parents and caregivers implement strategies to meet the child's needs.

After H was diagnosed with developmental disabilities, the juvenile court ordered mother to attend all of his therapy sessions and classes in order to understand his special needs and learn the skills required to meet those needs. Despite the court's order, Hyslop estimated that mother had attended only 60-70 percent of the classes. Furthermore, the parties stipulated that, between the time when DHS filed the amended petition for jurisdiction and the time of the hearing on that petition, mother had missed seven of the 14 speech therapy sessions that H had attended and seven of the 18 autism classes that he had attended.

Hyslop further explained that mother had a tendency to leave the classes that she did attend before they were finished, although she noted that mother generally gave a reason for leaving early. When Hyslop asked mother to arrange not to leave during class unless it was an emergency, mother agreed. Hyslop further explained that, when mother came to H's classes, she was enthusiastic about his learning, was engaged in the class, and was receptive to feedback.

The parties also stipulated to the following:

"[G]randmother believes * * * [that mother] loves her son and has made some effort to address his needs. However, grandmother feels that [mother] cannot or will not make the commitment required to meet all of his needs for a prolonged period of time.

"[Mother] continues, grandmother believes, to address [H's] needs according to [her] priorities and her level of commitment, and not the level of need that [H] requires.

"Given the length of time that has passed, grandmother cannot foresee a lasting commitment by [mother] to parent

[H], or [mother] making a lasting effort to meet his extraordinary needs.

"On mother's behalf, mother would state that she loves her child. * * * That mother was attempting to do the best that she could to meet [H's] needs while maintaining employment and safe and stable housing."

Based on the stipulations and the evidence, the juvenile court found that H has developmental problems requiring focused treatment, particularly because of his age—which was two years at the time of the jurisdictional hearing—and that mother has not been able to consistently meet these needs. Although the court noted that mother had been commended for her enthusiasm in learning about H's disabilities, it emphasized that she had demonstrated an inability to consistently be present at H's therapy sessions and classes so that she could learn more about H's needs and how she could meet them.

Consequently, the court concluded that the state had proved, by a preponderance of the evidence, the additional jurisdictional allegation alleged in the amended petition for jurisdiction:

"The child has been subject to threat of harm and/or neglect by the mother, in that the mother is unable and/or unwilling to meet the child's medical and developmental needs. The child has special needs and has been diagnosed with autism; the mother is unable and/or unwilling to understand, or demonstrate an understanding of, the child's specific needs to ensure his health and well-being."

The court entered a judgment of jurisdiction under ORS 419B.100(1)(c) over H based on the additional allegation and also issued a dispositional judgment in which it ordered mother to "submit to [urinalyses] as requested by [DHS] and/or treatment provider."

Mother appeals, arguing, in essence, that the evidence is insufficient as a matter of law to establish jurisdiction under ORS 419B.100(1)(c) based on the additional jurisdictional allegation.[1] ORS 419B.100(1)(c) provides, in

---

[1] Mother does not dispute the juvenile court's jurisdiction over H based on the facts in the original petition—*viz.*, that mother has a current diagnosis of severe attention deficit hyperactivity disorder, adjustment disorder with mixed anxiety, and depressed mood, that poses a risk of harm to H.

relevant part, that "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age" and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others." The child's condition or circumstances endanger the welfare of the child, for purposes of ORS 419B.100(1)(c), when they give rise to a current threat of serious loss or injury to the child that is reasonably likely to be realized. *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011).[2] The burden of proving facts sufficient to warrant jurisdiction is on the state. *Dept. of Human Services v. S. P.*, 249 Or App 76, 84, 275 P3d 979 (2012).

We determine whether jurisdiction is proper by reviewing "'the facts found by the juvenile court to determine whether they are supported by any evidence, and then to determine whether, as a matter of law, those facts together with facts implicitly found by the juvenile court, provide a basis for juvenile court jurisdiction under ORS 419B.100(1)(c).'" *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443, 295 P3d 672 (2013) (quoting *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010)).[3] Because, here, the historical facts are undisputed, we are left to determine, first, whether DHS has presented evidence from which the juvenile court could find that mother is unable or

---

[2] The state contends that the standard for establishing jurisdiction under ORS 419B.100(1)(c) that we articulated in *A. F.* is inconsistent with *Dept. of Human Services v. Smith*, 316 Or 646, 853 P2d 282 (1993). We have previously explained that the standards of *A. F.* and *Smith* "complement each other and correctly state the standard" for the juvenile court's jurisdiction under ORS 419B.100(1)(c). *Dept. of Human Services v. D. M.*, 248 Or App 683, 686, 275 P3d 971 (2012). We therefore reject the state's argument.

[3] When the juvenile court has already asserted jurisdiction, as the court did here, and the parent is only challenging an additional jurisdictional allegation,

"the juvenile court has jurisdiction in this case on the additional allegation if there is sufficient evidence, from which a reasonable factfinder could conclude by a preponderance of the evidence, either that a current risk of harm to [the child] exists from the additional allegation standing alone, or that the additional allegation contributes to or enhances the risk associated with the already established bases of jurisdiction."

*G. J. R.*, 254 Or App at 443-44. Because we conclude that a reasonable factfinder could conclude, by a preponderance of the evidence, that a current risk of harm to H exists from the additional allegation standing alone, we focus our analysis on that standard.

unwilling to meet and understand H's medical and developmental needs. If we conclude that DHS has presented sufficient evidence to support that finding, we must determine whether that finding, together with facts that the juvenile court implicitly found, provides a basis for the court to conclude that H's conditions or circumstances give rise to a current threat of serious loss or injury to H that is reasonably likely to be realized. As we explain below, we conclude that—in the totality of the circumstances—there was sufficient evidence in the record to find that mother is unable or unwilling to meet and understand H's medical and developmental needs and that that inability or unwillingness poses a current risk of harm to H that is reasonably likely to be realized.

We begin by addressing whether there is sufficient evidence in the record to support the court's finding that mother is unable or unwilling to meet and understand H's medical and developmental needs. The stipulations, along with Hyslop's report, establish the following facts. At the time of the jurisdictional hearing, H was two years old and had been diagnosed with autism and severe impairments of expressive and receptive language. He was receiving speech therapy and attending an autism class, the purpose of which was to both aid H with his disabilities and also aid his parents and caregivers in understanding his disabilities and learning how to meet his needs. The juvenile court could reasonably infer from that evidence that a caregiver who has not attended those therapy sessions and classes is not able to understand and meet the needs of a child who has the disabilities that H has.

Furthermore, the record establishes that, despite being ordered to attend H's therapy sessions and classes in order to understand his special needs and learn skills to meet those needs, mother's attendance was, at best, 70 percent. Mother specifically stipulated that, since DHS filed the amended petition for jurisdiction, she had missed seven of the 14 speech therapy sessions that H had attended and seven of the 18 autism classes that he had attended. The stipulations further establish that, in the opinion of grandmother, H's foster parent, mother is incapable of meeting H's needs for a prolonged period of time and that mother

addresses H's needs according to her own priorities. Based on grandmother's opinion, the court could infer that mother has had a poor attendance record to H's therapy sessions and classes because mother has not prioritized meeting H's needs.[4] Furthermore, the court could infer that mother's inability to place H's interests before her own will cause her to continue to have poor attendance at H's therapy sessions and classes.

Thus, the juvenile court reasonably could have inferred, based on the evidence in the record, that care-givers of H need training to understand and meet his needs. Furthermore, the court could infer that mother has failed, and will continue to fail, to attend many of H's therapy sessions and classes because she has not prioritized H's interests over her own. Given the combination of those inferences, the juvenile court reasonably could have inferred that mother was unable or unwilling to attend H's therapy sessions and classes and that her absences from those therapy sessions and classes would prevent her from understanding, and there-by becoming capable of meeting, H's medical and developmental needs. Thus, there is evidence in the record to support the juvenile court's finding that mother is unable or unwilling to understand and meet H's medical and developmental needs.

Although it is a close call, we further conclude that the evidence in the record was sufficient for the juvenile court to conclude that mother's inability or unwillingness to meet H's medical and developmental needs subjected H to a threat of harm or neglect. As we have stated, the stipulations establish that, at the time of the jurisdictional hearing, H was two years old and had been diagnosed with autism and severe impairments of expressive and receptive language. Based on those facts and the juvenile court's finding, it was

---

[4] Mother argues that the juvenile court was not permitted to rely on grand-mother's opinion because she was a "lay witness," relying on *Dept. of Human Services v. M. Q.*, 253 Or App 776, 242 P3d 616 (2012). Regardless of whether *M. Q.* provides any support for mother's argument, she did not challenge the admission of grandmother's opinion before the juvenile court. To the contrary, mother stipulated to grandmother's opinion. We therefore conclude that mother's argument is unpre-served and decline to consider it. *See* ORAP 5.45 ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]").

reasonable for the court to conclude that H's development and welfare would be injured if mother were responsible for his care because she does not understand how to meet his special needs. Without the ability to understand and meet H's developmental and medical needs, it is reasonably likely that mother's care would hinder H's development and fall short of satisfying his medical needs. Thus, we conclude that continued jurisdiction under ORS 419B.100(1)(c) was appropriate.

Mother also assigns error to the juvenile court's order, in the dispositional judgment, that mother submit to urinalyses. Mother contends that such an order is not rationally related to the bases for jurisdiction, *see* ORS 419B.343(1)(a), and emphasizes that, at the jurisdictional hearing, the court ruled that it would not require her to submit to urinalyses. The state agrees that the juvenile court decided that it would not require mother to submit to urinalyses and that the requirement that mother do that was erroneously included in the dispositional judgment. We agree and reverse and remand the dispositional judgment for the juvenile court to correct that error.

Jurisdictional judgment affirmed. Dispositional judgment reversed and remanded with instructions to enter a dispositional judgment that does not require urinalyses; otherwise affirmed.