Argued and submitted September 13, reversed December 18, 2013

In the Matter of A. B. F.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. L. F., Jr.,
*Appellant.*

Washington County Circuit Court
J130067;
Petition Number 01J130067;
A154230

316 P3d 424

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this juvenile dependency case, father appeals from the judgment taking jurisdiction—pursuant to ORS 419B.100(1)(c)[1]—over his child, A. Father argues that the juvenile court erred in taking jurisdiction over A, contending that the evidence presented by the Department of Human Services (DHS)—that father used marijuana and alcohol and was unable to protect A because father was subjected to domestic violence by mother and lacked sole legal custody—was insufficient to prove that those conditions and circumstances exposed A to a current risk of serious loss or injury that was likely to be realized. We agree with father and reverse the judgment.

The parties do not request that we exercise our discretion to review this case *de novo*, ORS 19.415(3)(b), and we decline to do so. *See* ORAP 5.40(8)(c) (we exercise *de novo* review "only in exceptional cases"). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's [determination] and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

We recite the facts consistently with the juvenile court's expressed and implied findings. When A was 23 months old, mother physically assaulted father in A's presence. Mother was arrested following the assault, and father informed police that he had consumed several alcoholic beverages that evening. Due to mother's arrest and father's apparent intoxication, DHS immediately placed A in nonrelative foster care. DHS petitioned the juvenile court to assert jurisdiction over A, pursuant to ORS 419B.100(1)(c), on the following bases relating to father:

"E. The father was subjected to domestic violence by the mother and the father is unable to protect the child from exposure to mother's violence.

---

[1] ORS 419B.100(1) provides, in pertinent part, that "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and *** (c) [w]hose condition or circumstances are such as to endanger the welfare of the person or of others."

"F. The father of the child does not have sole legal custody of the child and is unable to protect the child from the mother's abusive and neglectful behavior.

"G. The father's substance abuse interferes with his ability to safely parent the child.

"H. The father leaves the child with unsafe caregivers.

"I. [The father] is said child's legal father as he is listed on said child's birth certificate."

In the month before the jurisdictional hearing, father ended his relationship with mother and obtained a restraining order against her. After obtaining the restraining order, father called police to enforce it during a face-to-face confrontation with mother. Additionally, father initiated proceedings to obtain sole legal custody of A, but his petition had not yet been granted at the time of the jurisdictional hearing. Father also moved from mother's residence to a friend's house. When DHS determined that that residence was unsuitable, due to the presence of marijuana discovered during a housing evaluation, father then arranged to move to a family-friendly, sober housing facility, where he and A could live together. Father participated in drug and alcohol assessments, weekly outpatient treatment meetings, and random urinalysis. Father was expected to complete the treatment program approximately two months after the jurisdictional hearing, but only if he continued participation in the outpatient treatment program.

At the jurisdictional hearing, the evidence presented focused on father's marijuana and alcohol use, father's lack of safe housing, and A's behavioral issues.

Relating to the jurisdictional basis that father was unable to protect A because he was subjected to domestic violence by mother, DHS presented evidence of father's past relationship with mother, prior instances of domestic violence, A's presence and exposure to domestic violence, the status of father's restraining order against mother, and whether father had acted to enforce the restraining order.

Relating to the jurisdictional basis that father was unable to protect A from mother's domestic violence because he lacked sole legal custody of A, DHS presented evidence

of mother's prior history of domestic violence toward father stemming from mother's mental health issues. As noted, by the time of the jurisdictional hearing, father had ended his relationship with mother and had filed for sole legal custody. Father detailed the terms of the petition for sole legal custody that he had filed before the jurisdictional hearing, mentioning that the terms of that petition would require mother to have supervised parenting time with A, at her expense, if she could demonstrate that she was accessing and receiving treatment for her mental health conditions.

Regarding the jurisdictional basis that "father's substance abuse interferes with his ability to safely parent" A, DHS presented the following evidence: Father used alcohol two to three times per week and used marijuana a few times a week prior to A's removal, and had had a prior methamphetamine addiction. There was no evidence that he was currently engaging in methamphetamine use. Father was intoxicated on the night of the domestic violence incident, as demonstrated by his flushed face, watery and bloodshot eyes, and slow and slurred speech. One of the police officers who responded to father's domestic violence call testified that he had not felt comfortable leaving A in father's care, based on his assessment of father's high level of intoxication, angry outbursts, and prior criminal history. Father had begun drug and alcohol treatment and random urinalysis, and had had no positive urinalyses relating to alcohol, but with regard to father's marijuana use, the evidence showed only that father's "THC levels have been dropping."

DHS also presented evidence that A was exhibiting "concerning" behaviors. DHS caseworker, McLachlan, testified that A's foster parents were concerned about A's behavior, specifically that he would hit and bite others, would scream for hours, and was difficult to soothe. However, A had not exhibited those behaviors during visits with father. The foster parents also noted that A's legs were bowed and he was unable to walk well, and A had primarily been bottle fed prior to entering foster care.

DHS asserted that father lacked safe housing at the time of the jurisdictional hearing. Father's first attempt to have A returned to his care failed due to a caseworker's

discovery of marijuana during a housing inspection. Father had procured a housing unit at a sober-housing facility, but the unit was not available at the time of the hearing. Father's interim plan for safe housing, if A were to be returned to his care, was to check into a hotel until the sober-housing unit was available.

At the close of the evidence, the juvenile court made the following statement:

"Okay. So I believe that the State has proven the petition as to many of the allegations but not all. I think the State proved *** E, F, G and I, *** not H. The child is within the jurisdiction of [the] Court ***."

In response to father's argument that the court should not assert jurisdiction over A because DHS had not proved that A was exposed to a *current* risk of harm, the juvenile court stated:

"Okay. Thank you. I disagree. In any event, the child is a ward of the Court. We're going to set disposition out for a relatively brief period of time.

"* * * * *

"Here's what I'm thinking. I would like to see—I hope that [father] is correct that he'll get a place in this clean and sober living house in the near future. I don't want to see the child go and stay with him a week for [*sic*] a hotel. And you know, I'm sure he's willing to spend the money, but frankly, he ought to be saving that money. As long as he can remain clean and sober and keep himself and the child away from the mother, you know, my intention is to force the government to give the kid back to him as soon as he finds a reasonable place to live."

On appeal, father argues that the trial court erred when it asserted jurisdiction over A because DHS failed to prove that, as of the time of the jurisdictional hearing, A was exposed to a current threat of serious loss or injury due to father's conditions or circumstances.

Juvenile dependency jurisdiction is appropriate when a child's "condition or circumstances are such as to endanger the welfare" of the child. ORS 419B.100(1)(c). To determine if the child is "endangered," we look to whether

the child is exposed to conditions or circumstances that "present a *current* threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013) (emphasis added). DHS must prove that there is a nexus between the allegedly risk-causing conduct and the harm to the child. *Id.* at 62 (citing *Dept. of Human Services v. D. S. F.*, 246 Or App 302, 314, 266 P3d 116 (2011) (DHS has the burden to prove that the threat of harm is current and not speculative)); *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011). Moreover, when evaluating whether a parent's alleged behavior may cause harm to the child sufficient to support dependency jurisdiction, we must consider that "[t]he fact that a parent engages in behavior that could negatively affect his or her parenting does not necessarily mean that the behavior can serve as a basis for juvenile court jurisdiction over a child." *Id.* at 387. We examine the totality of the circumstances to determine if there is a reasonable likelihood of harm to the child's welfare. *C. J. T.*, 258 Or App at 61-62 (citing *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010)).

Even assuming that father's status as a domestic violence victim, lack of sole legal custody of A, and substance abuse could create a threat of harm to A, we conclude that, on this record, the state failed to establish that there was a current, nonspeculative threat of serious loss or injury to A as of the time of the jurisdictional hearing.

DHS presented no evidence that father could not protect A from mother's violence because he had been subjected to domestic violence by mother and lacked sole legal custody. Without evidence that father is unable to protect A, or that A will suffer some actual harm because father lacks sole legal custody, lack of a custody order alone is an insufficient basis for jurisdiction. *C. J. T.*, 258 Or App at 62; *see also State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009) (absent evidence that a parent "is a present danger to [the child]'s welfare, the lack of a custody order alone is not sufficient for jurisdiction pursuant to ORS 419B.100").

Furthermore, although we acknowledge that father's alcohol and marijuana use has the potential to constitute "conditions or circumstances" that could expose A to

a threat of harm, DHS presented no evidence to show how father's alcohol or marijuana use had harmed—or created a risk of harm to—A or the extent to which father's alcohol or marijuana use affected father's daily functioning or his ability to parent. *A. F.*, 243 Or App at 387. DHS also presented no evidence that, as of the time of the hearing, father was currently using alcohol, nor was there any evidence of the "effects of that use on the parent's conduct [which is] necessary to determine whether the parent's alcohol use creates a 'reasonable likelihood of harm to the welfare' of his *** child." *Id.* Furthermore, although DHS presented evidence regarding A's "concerning" behavioral problems, there was nothing to suggest that those behavioral problems were in any way related to father's alcohol and marijuana use or inability to protect A from mother's violence. *C. J. T.*, 258 Or App at 62 (requiring DHS to prove a nexus between the allegedly risk-causing behavior and the harm to the child).[2]

Because DHS failed to establish a current risk of serious loss or injury to A, the requirements of ORS 419B.100(1)(c) have not been met. Thus, we conclude that the record is legally insufficient to support jurisdiction over A.

Reversed.

---

[2] We note that DHS presented no evidence directly connecting father's housing situation at the time of the jurisdictional hearing to a *current* risk of harm to A based on father's inability to protect A from mother's domestic violence or father's substance abuse. To the extent that the trial court based its jurisdictional decision on father's housing situation, and because there was no evidence of a nexus between father's housing situation and a current risk of harm or father's inability to protect A or substance abuse, the court erred by basing its jurisdictional decision on facts that were not alleged in the petition. *Dept. of Human Services v. J. R. L.*, 256 Or App 437, 447, 300 P3d 291 (2013).