Argued and submitted October 15, vacated and remanded December 31, 2014

In the Matter of A. M.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Multnomah County Circuit Court
2013800841;
Petition Number 109782M;

In the Matter of M. F.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Multnomah County Circuit Court
2013800842;
Petition Number 109782M;

In the Matter of A. M.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Multnomah County Circuit Court
2013800843;
Petition Number 109782M;

In the Matter of J. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Multnomah County Circuit Court
2013800844;
Petition Number 109782M;

In the Matter of R. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
*Appellant.*

Multnomah County Circuit Court
2013800845;
Petition Number 109782M;
A156851

341 P3d 858

Megan L. Jacquot argued the case and filed the brief for appellant.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief was

Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this juvenile dependency case, father appeals a judgment establishing jurisdiction over his five children. Father argues that the evidence is factually insufficient to support jurisdiction. Father also argues that the court erred by denying him the opportunity to present evidence that he did not commit sexual abuse despite his criminal conviction; we reject that argument without discussion. We conclude that, because the juvenile court was required to consider whether the challenged allegations in mother's stipulation continued to persist at the time of the jurisdictional hearing, the court must reconsider its decision. Accordingly, we vacate and remand.

When reviewing a juvenile court's jurisdictional determination, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's ruling and then assess whether the record was legally sufficient to permit the outcome that was reached. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We are bound by the juvenile court's factual findings unless there is no evidence to support those findings. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010). Father does not request that we exercise our discretion to engage in *de novo* review, and we decline to do so. ORS 19.415(3)(b); ORAP 5.40(8)(c) (we conduct *de novo* review only in "exceptional" cases).

The following facts are undisputed. In January 2013, the Department of Human Services (DHS) filed a petition alleging jurisdiction over father's five children based, in part, on allegations that father had sexually abused his oldest child, A, and other relatives. The state brought a criminal case against father. The juvenile court served father with a dependency summons and postponed the jurisdictional hearing until after the criminal trial. In September 2013, approximately nine months later, father was convicted of multiple counts of sexual abuse. The victim of two of those counts was A. The court sentenced father to 219 months' imprisonment under Measure 11.

After father's conviction, the state filed an amended petition, and mother stipulated to the following facts contained in that amended petition:

"2A. The Father was convicted of 14 counts of sexual abuse in the first degree for [abusing A] and [other relatives]. The mother needs the assistance of DHS and the court in order to access services specifically designed to address sex abuse in the family. She also needs services to learn how to protect all her children from sexual abuse.

"\* \* \* \* \*

"2C. The mother needs the assistance of the court and DHS to meet [A]'s emotional needs and learn to protect her from family emotional and physical pressure regarding the child's disclosure of sexual abuse."

In December 2013, the court issued findings accepting those stipulations.

In January 2014, DHS filed a second amended petition. Like each of the preceding petitions, the allegations in the second amended petition begins:

"The children are within the jurisdiction of the Court by reason of the following facts: The condition and circumstances of the above-named minor children are such as to endanger their own welfare or the welfare of others, to-wit:"

As with each of the preceding petitions, a number of factual paragraphs follow that statement. In the second amended petition, the relevant paragraphs are:

"2D. The father sexually abused the children. He was convicted of two counts of Sexual Abuse in the First Degree and one count of Sexual Abuse in the Third Degree for sexually abusing [A]. [Father] also was convicted of three counts of Sexual Abuse in the First Degree for sexually abusing [another relative]. [Father] also was convicted of three counts of Sexual Abuse in the First Degree for sexually abusing [another relative]. [Father] also was convicted of three counts of Sexual Abuse in the First Degree for sexually abusing [another relative]. On November 4, 2013, the father was sentenced to 219 months (18 years, 11 months) in prison under Ballot Measure 11. The father is not available as a custodial resource to his children.

"\* \* \* \* \*

"2F. The father has sexually abused multiple family members. Over the years, his condition has not remediated. In November 2013, the father was sentenced to 219 months of prison for sexually abusing child family members. This sexual abuse constitutes aggravated circumstances."

Father did not stipulate. He contested jurisdiction. The jurisdictional hearing took place in April 2014. When calling the case, the district attorney stated, "This is set for a trial on allegations to the father only." Even so, mother was present, represented by counsel, and introduced on the record. Father and his attorney were present and introduced on the record, as were A and her attorney, and the remaining children, who were collectively represented by a fourth attorney. During the hearing, A presented evidence that mother was actively involved in counseling, attending weekly meetings, and that she consistently made protective statements about the children. Moreover, mother's counselor and the children's counselor both recommended increased autonomy from DHS and the court for mother and the children. One counselor wrote in a letter that "continued Court and DHS involvement will be an impediment to [mother and the children's] therapeutic processing of these events." In their closing arguments, A, father, and the children made arguments based on that evidence. The court did not call on mother to make arguments or call witnesses.

Following the hearing, the juvenile court entered a jurisdictional judgment. In the findings section of that form judgment, the court wrote, "Referee Hughes found the children within the jurisdiction as to mother on 12/17/13. This finding was not challenged by any party." Regarding father, the court found allegations 2D and 2F to be true. After making those findings, the court took jurisdiction of the children "pursuant to ORS 419B.100."

ORS 419B.100 provides, in relevant part:

"(1) Except as otherwise provided in subsection (5) of this section and ORS 107.726, the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others;

"* * * * *

"(e) Whose parents or any other person or persons having custody of the person have:

"* * * * *

"(D) Failed to provide the person with the care, guidance and protection necessary for the physical, mental or emotional well-being of the person[.]"

As a preliminary matter, we note that the juvenile court's judgment does not specify the portion of ORS 419B.100 on which the court relied upon in determining that the court had jurisdiction. On appeal, DHS asserts that the court found jurisdiction based on ORS 419B.100(1)(e)(D). However, neither the state's second amended petition, nor any of the preceding petitions, allege jurisdiction under that portion of the statute. "The petition alleging jurisdiction must set forth in ordinary and concise language * * * the facts that bring the child within the jurisdiction of the court, including sufficient information to put the parties on notice of the issues in the proceeding." ORS 419B.809(4). "Only the petition or the jurisdictional judgment can provide a parent with adequate notice." *Dept. of Human Services v. J. R. L.*, 256 Or App 437, 450, 300 P3d 291 (2013) (internal quotation marks omitted). Here, the state's petitions neither references ORS 419B.100(1)(e)(D) nor use the language of that subparagraph. Each petition, however, does mirror the language of ORS 419B.100(1)(c), stating, "The children are within the jurisdiction of the Court by reason of the following facts: *The condition and circumstances* of the above-named minor children *are such as to endanger their own welfare or the welfare of others*[.]" (Emphasis added.) Therefore, we reject DHS's assertion that the court determined jurisdiction based on ORS 419B.100(1)(e)(D) and analyze this case under ORS 419B.100(1)(c), the basis alleged in the petitions.

Under ORS 419B.100(1)(c), "the burden is on the state to show that harm is, in fact, present." *C. Z.*, 236 Or

App at 443. The risk of harm must exist at the time of the hearing. *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011). ORS 419B.100(1)(c) "requires the court to consider all of the facts in the case before it and to consider whether, under the totality of the circumstances, the child's welfare is endangered." *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 394, 328 P3d 769 (2014). "[I]f a child has a parent who appears in the proceeding and is capable of caring for the child safely, juvenile court jurisdiction is not warranted * * * unless and until DHS prove[s] that neither parent who appeared could safely parent the child[.]" *Id.*

We begin by analyzing the court's findings about mother's capability to safely care for the children because that issue is dispositive. As mentioned, mother stipulated to allegations in December 2013, the court accepted those stipulations at that time, and, following the jurisdictional hearing in April 2014, the court again made findings about mother's stipulations. Father argues that mother had ameliorated the conditions and circumstances identified in the stipulations by the time of the hearing. Thus, because ORS 419B.100(1)(c) requires findings at the time of the hearing, the stipulations are insufficient to support jurisdiction. DHS's response is twofold. DHS argues that (1) the stipulations did not have to be made at the time of the hearing because the court had already established jurisdiction of the children "as to mother" when it accepted the stipulations in December 2013, and alternatively, (2) the judgment of jurisdiction incorporated mother's stipulations and therefore the findings were made at the time of the hearing.

We first address DHS's argument that the court had jurisdiction of the children "as to mother" prior to the jurisdictional hearing. As we have recently clarified, although the use of the shorthand phrases "jurisdiction as to mother" or "jurisdiction as to father" is common, the court does not take jurisdiction with regard to a mother or a father; rather, the court takes jurisdiction of a child. *W. A. C.*, 263 Or App at 392.

In *W. A. C.*, the mother stipulated to allegations contained in a petition, including allegations that the father had

subjected the mother to domestic violence. *Id.* at 385-86. The father did not stipulate to jurisdiction—in fact, he contested those allegations. *Id.* at 386. The court set a future date to consider allegations against the father, but purported to take jurisdiction of the children at the time that it accepted the mother's stipulations. *Id.* The father argued that "the juvenile code contemplates a single judgment of jurisdiction, based on the totality of the conditions and circumstances of *the child,* not on a division of proof as to each parent." *Id.* at 391-92 (emphasis in original). We agreed, holding that

> "a juvenile court cannot assert jurisdiction over a child based on the admissions of one parent when the other parent has been served and summoned, appears, and contests the allegations in the petition. In such a case, the juvenile court can only assume jurisdiction over the child after a contested hearing on the allegations denied by the other parent."

*Id.* at 394. Consequently, a court must make findings regarding contested allegations about both parents who before the court may take jurisdiction over the children. *See id.* (noting that DHS cannot "depriv[e] one parent of legal and physical custody of the child[] without a determination that that parent cannot safely parent the child").

Thus, in this case—where father was served, summoned, appeared, and contested jurisdiction—the court could not have taken jurisdiction over the children prior to the jurisdictional hearing on the contested allegations. *Id.* at 394. Consequently, we reject DHS's argument that the court had jurisdiction of the children at the time of mother's stipulations.

As noted, the court stated in the jurisdictional judgment, "Referee Hughes found the children within the jurisdiction as to Mother on 12/17/13. This finding was not challenged by any party." However, like the father in *W. A. C.,* father, A, and the children contested mother's stipulations. A's lawyer presented evidence that mother was actively involved in counseling and consistently made protective statements about her children, that all counselors recommended increased autonomy from DHS, and that one counselor opined that continued court and DHS involvement

would be an impediment to mother and the children's recovery. In their closing arguments, father and the children made arguments based on that evidence.

That evidence directly challenges mother's stipulations—made several months before the jurisdictional hearing in the wake of father's recent sexual abuse convictions—that mother needed the assistance of DHS to "access services specifically designed to address sex abuse in the family, * * * to learn to protect all her children from sexual abuse, * * * to meet [A]'s emotional needs, and learn to protect her from family emotional and physical pressure regarding the child's disclosure of sexual abuse." Yet, the court found that no party challenged mother's stipulations. We hold that there is no evidence to support that finding, because, in fact, the parties did challenge mother's stipulations.

Turning to DHS's second argument—that the April 2014 jurisdictional judgment incorporated the court's December 2013 findings about mother—we agree that a court may make findings about one parent and then proceed to make findings about the other parent before finally taking jurisdiction based on that totality of evidence. However, the conditions and circumstances that give rise to jurisdiction must exist at the time of the hearing. *A. F.*, 243 Or App at 386. Here, A presented evidence that the conditions and circumstances identified in mother's stipulations did not exit at the time of the hearing. Yet, the court's April 2014 findings about mother merely state that the court had made prior findings about mother and deny that those findings were challenged. However, those findings were challenged. Accordingly, the court erred in finding that no party had challenged mother's stipulations. Consequently, we vacate and remand for the court to determine whether, in light of the totality of the evidence presented by the parties, there exists a basis for jurisdiction.

Vacated and remanded.