No. 248 April 17, 2024 117

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. H., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. R.,
*Appellant.*

Crook County Circuit Court
22JU05969; A182035 (Control)

In the Matter of J. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. R.,
aka R. W.,
*Appellant.*

Crook County Circuit Court
23JU02123; A182036

Annette C. Hillman, Judge.

Argued and submitted March 4, 2024.

Elena C. Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this consolidated juvenile dependency case, mother appeals from a judgment of the juvenile court asserting jurisdiction over her two children, C and J. Mother argues that the juvenile court erred in exercising jurisdiction over C and J because, in her view, the evidence is insufficient to permit the exercise of dependency jurisdiction on the bases identified by the court. Neither party has requested that we conduct *de novo* review, and we see no reason to exercise our discretion to do so. ORS 19.415(3)(b); ORAP 5.40(8)(c) (explaining that we exercise our discretion to review *de novo* "only in exceptional cases"); ORAP 5.40(8)(d) (outlining nonexclusive list of criteria relevant to the exercise of discretionary authority to review *de novo*). Accordingly, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Dept. of Human Services v. J. E. F.*, 290 Or App 164, 166-67, 421 P3d 415, *rev den*, 362 Or 794 (2018). Reviewing under that standard, we affirm.

*Background.* Because the parties are familiar with the factual and procedural background, we do not set out a detailed recitation and instead provide only a truncated summary for this nonprecedential memorandum opinion. C (who is also known as Junior) and J were living with father when, in August 2021, DHS removed the children from father's care and placed them with mother. They stayed with mother for two months before DHS removed them from mother's care and placed them in substitute care. C and J were returned to father's care in 2022, and the juvenile court issued a custody order in November 2022 establishing father as the sole custodial parent of C and J. Mother did not challenge that order. In the following months, C, and later J, were again removed from father's care and placed in substitute care. Father did not challenge the allegations against him and is not party to this appeal. As to mother, DHS filed dependency petitions regarding both C and J, and following a trial, the juvenile court concluded that DHS had proven the following bases for jurisdiction: Mother's own trauma and PTSD responses

impairs her ability to parent her children with behavioral needs that require structure and routine; mother needs the assistance of DHS to establish a consistent relationship with the children; and mother needs the assistance of DHS to gain skills and education to parent her children with high needs and understand their needs.

*Applicable law.* ORS 419B.100(1)(c) allows a juvenile court to assert dependency jurisdiction over a child when it concludes, under the totality of circumstances, that the child's conditions or circumstances endanger the child's welfare. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). The key inquiry in determining whether conditions or circumstances warrant jurisdiction is whether there is a reasonable likelihood of harm to the welfare of the child. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010). Any threat of harm must be current and not simply that the child's welfare was endangered at some point in the past. *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011).

*Sufficient evidence supports the juvenile court's assertion of jurisdiction over C.* C is 10 years old and has diagnoses related to anxiety and stress, PTSD, ADHD, and reactive attachment disorder. C takes medication for ADHD, attachment disorder, and to aid sleep. C also attends therapy counseling every week and medication management sessions every other week, and he has attended an alternative school that offers a "partial hospitalization day treatment center for kids." C has "reactive behaviors" and becomes "very explosive" and "very angry" when not redirected. Continuity of care is important for C, especially where his medications are involved.

Mother has been diagnosed as having PTSD, has previously engaged in limited counseling services, and has prescribed medication for anxiety. Mother does not regularly take her medication because she struggles to pay for the prescription and no longer feels that she needs it. At the time of the dependency trial, mother was not currently engaged in mental health or counseling services. Her former counselor, Parchmon, testified that mother's treatment with Parchmon's organization ended due to "inappropriate

behavior" and that mother needed more services than Parchmon could provide, including parenting support and additional services for mental health.

Mother currently has no visitation or contact with C. C has "expressed a great fear of returning to his mother" and his counselor has recommended no visitation at this time "due to his reactive behaviors that he has when he does have visits with [mother]." The last time mother saw C was when C was under father's care sometime in 2022, and C "took off running, scared, back to his dad and just hid."

According to C's resource parent, C's behavioral issues have improved while in her home, but C still requires "an adult who can help re-direct [C] in a healthy manner." The resource parent testified that, "if you cannot respond in a manner that is calm and collected and loving, then [C] will respond in a very impulsive and at points a very aggressive or physically aggressive behaviors."

In late 2022, after C was removed from father's care for the second time, DHS considered mother as a place-ment option. However, mother was "unwilling to provide" C's medications because she believed that it could lead C to become addicted to methamphetamine. She also did not believe in the treatment provided by C's mental health pro-vider, expressing that she would be able to provide for C's needs without medication or treatment. Given this record, the juvenile court could permissibly conclude that the risks surrounding mother's unwillingness to provide adequate treatment for C's mental health diagnoses currently existed because, at the jurisdictional hearing for this dependency case, mother testified that she believed she could meet C's needs without the help of a therapist or counselor, that C had previously asked her to take C out of mental health counsel-ing, and that she would work on having a better relationship with C so that she could "gradually work him out of" the mental health services.

*Sufficient evidence supports the juvenile court's assertion of jurisdiction over J.* J is eight years old and, like C, is "very high needs" and requires a "pretty structured environment." Although J has not received a mental health

diagnosis, he attends mental health services for his overall well-being. DHS has attempted to establish visits between J and mother but has struggled to contact mother. Mother and J had one visit when J was removed from father's care, but J did not want "to have any time with [mother] at all" and continually asked to leave.

Cummings, an in-home safety service provider, worked with mother when both kids were temporarily placed in mother's home. She testified that she saw some improvement with mother's ability to manage the children's behavior, but that mother's own trauma would, "at times, put her children's safety at risk." Both C and J are "very high needs" and, Cummings testified, it was not a safe situation for them in mother's care. DHS determined that living with mother was not safe for the children, due to "mother's behaviors of impulsivity and lack of mental health stability."

According to J's resource parent, J still requires a high level of supervision by an adult "who understands what's going on with him and how to work his behavior." For instance, there was testimony that J's destructive behaviors had increased and was sometimes difficult to redirect because he becomes "emotional and argumentative" such that he requires attention and comfort before he can move to the next task. In addition, there was evidence that J gets "very emotional very quickly" and "tends to just lash out" if he gets upset when playing with other kids. J has also engaged in sexually inappropriate play and requires direct-sight supervision. Given that evidence, the juvenile court permissibly could conclude that the combination of mother's own behaviors and lack of mental health stability and J's high needs provided a sufficient record to support each of the bases of jurisdiction.

In sum, under the totality of circumstances and viewing the evidence in the light most favorable to the juvenile court's determination, the record contains legally sufficient evidence to support the court's determination that placing C and J in mother's care presents a reasonable likelihood of harm to the welfare of C and J.

Affirmed.