Argued and submitted September 21, reversed December 8, 2021

In the Matter of G. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. D.,
*Appellant.*

Baker County Circuit Court
20JU05446;
A175450 (Control), A175501, A175553

In the Matter of N. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. D.,
*Appellant.*

Baker County Circuit Court
20JU05448;
A175451, A175502, A175554

502 P3d 1183

Father appeals from judgments establishing dependency jurisdiction over his two teenaged children, G and N. The juvenile court found jurisdiction based on father's incarceration and criminal history. Father challenges jurisdiction and certain court ordered services. G and N lived with father during periods of time when he was not incarcerated. When he was incarcerated, father made plans for his mother—G and N's grandmother—to care for them. Eventually, G and N's mother resumed their care. DHS later intervened due to reports that mother had left G and N alone for extended periods of time. Because mother objected to G and N being returned to their grandmother's care, father suggested that they be placed with his brother—G and N's paternal uncle. DHS considered the uncle to be an appropriate placement for G and N, but it nevertheless placed G and N in nonfamily, substitute care due to concern that it could not prevent mother from removing G and N from their uncle's care in the absence of a custody order between mother and father. *Held*: The juvenile court erred in finding jurisdiction over G and N. Father acted as a custodial resource by arranging care for his children with an appropriate caregiver when he could not provide that care himself. Evidence of father's criminal history, without more, was insufficient to support a nonspeculative inference that father placed G and N at risk of harm at the time of the fact-finding hearing. The lack of a custody order was not alleged as a basis

for jurisdiction and, even if it had been, the lack of such an order is not alone sufficient to establish jurisdiction. It was not necessary for the Court of Appeals to reach the last three assignments of error.

Reversed.

Matthew B. Shirtcliff, Judge.

Elena Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Reversed.

**MOONEY, J.**

Father appeals from judgments establishing dependency jurisdiction over his children, G and N. G and N's mother failed to appear for the jurisdictional hearing, and the court found, after presentation of evidence in her absence, that the Department of Human Services (DHS) had proved the allegations against her. Father appeared, and, after a full fact-finding hearing, the court found that DHS had established that father was incarcerated and unable to be a custodial resource for his children and that his criminal behavior compromised his ability to safely parent them. In his first six assignments of error, father challenges the court's exercise of dependency jurisdiction over G and N. In his last three assignments, he disputes the validity of the juvenile court's orders requiring him to submit to a mental health assessment, a drug and alcohol evaluation, and a batterer's intervention assessment. We conclude that the juvenile court erred in exercising jurisdiction over G and N, and, therefore, we do not reach the final three assignments of error. We reverse.

Father does not request, and we do not exercise our discretion to conduct, *de novo* review. ORS 19.415(3)(b); ORAP 5.40(8)(c). Instead, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Under ORS 419B.100(1)(c), the juvenile court has "exclusive original jurisdiction" over any case involving a child "whose condition or circumstances are such as to endanger the welfare" of the child. A child is endangered if the child is exposed to conditions or circumstances that "present a current threat of serious loss or injury." *Dept. of Human Services v. A. L.*, 268 Or App 391, 397, 342 P3d 174 (2015) (quoting *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013)). "The burden of proof rests with DHS to establish that the threat is current and nonspeculative." *Dept. of Human Services v. F. Y. D.*, 302 Or App 9, 19, 457 P3d 947 (2020). And "there must be a reasonable

likelihood that the threat will be realized." *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011). DHS has the additional burden of proving a connection between the allegedly risk-causing conduct and the harm to the children. *C. J. T.*, 258 Or App at 62. The juvenile court considers "the totality of the circumstances" in determining dependency jurisdiction. *State ex rel Juv. Dept of Lane County v. Smith*, 316 Or 646, 652-53, 853 P2d 282 (1993).

The pertinent facts are not disputed. G and N, both teenagers at the time of the jurisdictional hearing, had lived with both of their parents for some unknown period of time in their early years. Father was incarcerated for a two to three-year period of time approximately 10 years before the jurisdictional hearing.[1] G and N were cared for during that period of incarceration by father's mother and sister. Father resumed the day-to-day care of G and N when he was released from prison. He continued to parent them for the next two years until he was again incarcerated after being convicted of aggravated battery, for stabbing his former girlfriend. That crime took place when father was G and N's custodial parent, although there is no evidence in the record about where the crime was committed, whether G and N were nearby at the time it occurred, or whether they were placed at risk of harm themselves. Father remained incarcerated for nearly six and one-half years at the time of the jurisdictional trial. Paternal grandmother resumed care of G and N when father was incarcerated, and after approximately one year, she "permitted mother to take them" and resume their care.

In 2020, DHS became involved with the family after receiving reports that mother was leaving the children unsupervised for extended periods of time. Mother objected to the caseworker's suggestion that G and N be placed with their paternal grandmother or aunt. Father requested that G and N be placed with his mother. As an alternative, he requested placement with his brother, who G and N had lived with at some point in the past. DHS offered no evidence that the uncle was an unsafe or inappropriate caregiver for

---

[1] There is no evidence in the record that identifies the crime or crimes for which father was incarcerated during that two to three-year period.

G and N. Ultimately, however, DHS placed the children in substitute care due to its concern that, in the absence of a formal custody order between the parents, DHS could not ensure that mother would not remove G and N from their uncle's care. Father was still in prison at the time of the jurisdictional hearing, with an expected release date three weeks later.

The lack of a custody order does not by itself support jurisdiction. *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172, 316 P3d 424 (2013). And it is important to note that DHS did not allege, and the court did not find, that the lack of a custody order placed G and N at risk of harm. In fact, the evidence establishes that when father began serving his six and one-half year sentence, paternal grandmother worked out an arrangement with mother where mother had to be sober for a year, obtain housing and otherwise prepare for the return of her children. Mother complied with those requests, and paternal grandmother thereafter permitted her to resume care of G and N. There is no evidence that mother ever unilaterally removed—or attempted to remove—the children from anyone's care, and there is no evidence that she intended to do so in the future.

Not long before the jurisdictional trial, father arranged for G and N to stay with his brother, where father intended to be paroled upon his release from prison. At the time of the hearing, father was in the process of obtaining the appropriate paperwork to delegate his parental authority over G and N to his brother. His brother was willing to have G and N come live with him; mother testified that she "would never" attempt to remove G and N from their uncle's care; and G and N told the juvenile court that they wished to stay with their uncle. DHS offered no evidence that the uncle posed a risk of harm to G and N and, in fact, offered testimony through the caseworker that she does "not believe that [the uncle] will not be an adequate safety service provider." DHS nevertheless argued that father's "alternative family plan" was "not sufficient to provide for the health, safety, and well-being of the children and that jurisdiction would be needed in this case to provide for the children."

The juvenile court relied on *F. Y. D.*, in its decision to establish jurisdiction, stating that:

> "This Court can take jurisdiction even when there's a third-party caregiver potentially there for the children, but the inquiry is the totality of the circumstances regarding the current risk of loss or injury. \*\*\*. In [*F. Y. D.*, 302 Or App 9, the] father was to be released in a short period of time, the court said four to five months. The Court of Appeals found four to five months as a short period of time coming up for release and the Court said it was clear from the trial court's findings that the father's entrustment of the child to a third party was not a long—not on a long-term basis and the court found that there was some risk, current risk, nonspeculative risk of harm because of it \*\*\*.

> "\*\*\*\*\*

> "\*\*\* [Father is] going to be out very soon, but much less than the four to five months that was cited in the *F. Y. D.* case that the court still found was a very short period of time dealing with a third-party delegation."

But *F. Y. D.*, does not hold that a third-party caregiver arrangement must be long-term to be protective and safe for a child. Instead, we concluded in that case that jurisdiction was appropriate because the father intended to resume his child's care immediately upon release from prison and that, given his "*poor judgment and decision making,*" he was not a safe parent. *Id.* at 11. It was the father who posed the risk of harm to his child, not the third-party caregiver.

Here, DHS did not establish that G and N would be at risk of harm in their uncle's care. To the contrary, the evidence from DHS was that he was an appropriate placement for the children. Father's plan to entrust G and N to the care of their uncle while father finished serving his incarcerative sentence squarely addresses the allegation that he is unable to be a "custodial resource" for G and N due to his incarceration. He arranged for his children to be cared for in the home of his brother who is willing to care for and protect G and N in father's absence and who has a safe home that will accommodate them. When father arranged for G and N to live with his brother while he remained in prison, he was

acting as a responsible parent and "custodial resource" for them. The juvenile court erred when it concluded otherwise. *See A. L.*, 268 Or App at 400 (holding that jurisdiction was not warranted where the parents had delegated primary caregiving responsibilities of their child to a relative who did not present a risk of serious loss or injury to the child).

With respect to the allegation that father's "criminal behavior compromises his ability to safely and adequately parent his children," DHS relies on father's criminal history and argues that it provides a "reasonable basis to predict that he could engage in criminal behavior in the future leading to incarceration and his removal as a parenting resource for the children." But a prediction of what "could" happen and what that might lead to is speculative. Without doubt, the most recent criminal episode relied upon by DHS was serious—it involved father stabbing his former girlfriend. But there is no evidence that G and N were placed at risk of harm when that crime was committed. And although father's sentence was significant, by the time of the jurisdictional trial, he had served all but three weeks of it. He had taken anger management classes and engaged in other programming and recovery groups while in prison. When father's criminal history is considered along with that more recent history, the prediction that he might engage in more crimes remains an unknown. *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 140, 413 P3d 1005 (2018) (holding that a parent's incarceration can only be the basis for jurisdiction over a child if there is a reasonable likelihood that harm will occur as a result of the incarceration). The burden to establish that father poses a current risk of harm to G and N based upon his criminal history is on DHS, and it has not met that burden.

The evidence does not establish that father or his brother pose a current risk of harm to G and N. Father made appropriate arrangements for his teenaged children when that became necessary. The record is legally insufficient to support jurisdiction.

Reversed.