***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted January 17; in Case No. 22JU00073, reversed and remanded for
entry of a judgment omitting allegation 3G as a basis for jurisdiction, otherwise
affirmed; in Case Nos. 21JU02750, 21JU02751, and 21JU02752, affirmed
April 5, 2023

In the Matter of S. C., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. W.
and S. E. C.,
*Appellants.*

Marion County Circuit Court
21JU02750; A179268 (Control)

In the Matter of P. C., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. W.
and S. E. C.,
*Appellants.*

Marion County Circuit Court
21JU02751; A179269

In the Matter of E. C., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. W.
and S. E. C.,
*Appellants.*

Marion County Circuit Court
21JU02752; A179270

In the Matter of A. M. C., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. W.
and S. E. C.,
*Appellants.*

Marion County Circuit Court
22JU00073; A179271

Tiffany Underwood, Judge pro tempore.

Christa Obold Eshleman and Youth, Rights & Justice filed the brief for appellant K. W.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant S. E. C.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

In Case No. 22JU00073, reversed and remanded for entry of a judgment omitting allegation 3G as a basis for jurisdiction; otherwise affirmed. In Case Nos. 21JU02750, 21JU02751, and 21JU02752, affirmed.

SHORR, P. J.

In this consolidated juvenile dependency appeal, mother and father appeal from jurisdictional judgments entered in July 2022 regarding their four children: A (six months old), E (one year old), P (two years old), and S (four years old). Mother raises four assignments of error and father raises 16 assignments of error.[1] Both parents request that we reverse the judgments as to each child, and, in the alternative, to reverse as to individual allegations that were not supported by sufficient evidence in the record. We agree with parents that the juvenile court erred in asserting jurisdiction on the basis that father had pending criminal charges and would therefore not be a custodial resource for A. As to the other bases on which the juvenile court took jurisdiction, having reviewed the record, we conclude that the court did not err.

We review the sufficiency of the evidence support-ing dependency jurisdiction by "view[ing] the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess[ing] whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

The Department of Human Services (DHS) removed E, P, and S from parents' care after E presented at the hos-pital in June 2021 with serious brain injuries. In December 2021, the juvenile court entered judgments taking juris-diction over those three children after ruling that father had caused E's injuries by shaking her. Mother and father had another child, A, in January 2022; DHS immediately removed A and filed a petition alleging that she was within the court's dependency jurisdiction. DHS also filed new dependency petitions regarding E, P, and S.

---

[1] Mother and father use different organizational structures to assert their assignments of error. Mother alleges one assignment for each child and father alleges one assignment for each challenged jurisdictional basis. In the end, each parent challenges the 16 jurisdictional bases (seven regarding A and three each regarding the other three siblings) on which the juvenile court asserted jurisdic-tion over their children.

In its amended petition as to A, DHS alleged, in part, that

"[3]A.   The mother exposed the child to unsafe person(s).

"[3]B.   The mother lacks the parenting skills necessary to safely and appropriately parent the child.

"[3]C.   The mother's mental health problems interfere with her ability to safely parent the child.

"[3]D.   Despite having been offered services to address the safety threats posed by mother that interfere with her ability to safely parent the child, the mother has been unable to remedy the safety threats posing a risk of harm to this child.

"[3]E.   The mother has other children for whom she is currently not a custodial resource and the conditions and circumstances giving rise to their removal, which include exposure to unsafe persons, have not been changed or ameliorated.

"[3]F.   The father caused serious physical injury to this child's sibling by shaking that child.

"[3]G.   The father is incarcerated for charges of assault in the first degree and two counts of criminal mistreatment in the first degree, and unavailable to be a custodial resource.

"[3]H.   The father has other children for whom he is currently not a custodial resource, and the condition and circumstances that brought those children into care have not been remedied or ameliorated and presents a risk of harm to this child."

In the second petitions regarding E, P, and S, DHS alleged, in part:

"[4]F.   The mother lacks the parenting skills necessary to safely and appropriately parent the child.

"[4]G.   The mother's mental health problems interfere with her ability to safely parent the child.

"[4]H.   Despite having been offered services to address the safety threats posed by mother that interfere with her ability to safely parent the child, the mother has been

unable to remedy the safety threats posing a risk of harm to this child."

Mother and father contested those allegations, and the juvenile court held a hearing over three days. Because father had been released from jail pending a criminal trial and was no longer incarcerated, allegation 3G was amended at the conclusion of the hearing to state, "The father is charged with assault in the first degree and two counts of criminal mistreatment in the first degree, and unavailable to be a custodial resource." The juvenile court took the matter under advisement. The court shortly thereafter held a hearing at which it explained its findings and the basis for those findings, and asserted jurisdiction based on all of the allegations, except for allegation 3A, over the four children. In July 2022, the juvenile court entered judgments of jurisdiction and disposition for each of the children. Parents appeal those judgments.

As noted above, having reviewed the record, we conclude that the juvenile court properly asserted jurisdiction based on allegations 3B, 3C, 3D, 3E, 3F, 3H, 4F, 4G, and 4H. However, we agree with parents as to allegation 3G, which relates to father's unavailability as a custodial resource.

Father had argued below that the fact that he was facing criminal charges was not in and of itself sufficient to give rise to jurisdiction. When addressing allegation 3G, the juvenile court stated, in part:

"So I will find that the State has proven this allegation, I think it's important to note that although a grand jury has indicted father on these charges, the allegations themselves are insufficient to establish the jurisdiction, as the fact that he was indicted is only an accusation and does not by itself provide any new facts about any risk that [A] is exposed to, but based on the charges, he is not available as a custodial resource for [A] and has not made any arrangements for [A] to be cared for during this time of unavailability, so based on this lack of arrangement to provide necessary care for an infant child, I will find that father's unavailability to be a custodial resource poses a current risk of harm to [A]."

Father notes on appeal that the juvenile court correctly stated that the pending charges themselves did not give rise

to jurisdiction.[2] However, father argues that DHS did not offer any evidence to demonstrate that father was likely to engage in similar criminal behavior again or to be arrested, held in custody, and become unavailable to care for A in the future. And therefore, according to father, the juvenile court erred in ruling that A was at risk of a serious loss or injury as a result of father's criminal charges that was reasonably likely to occur in the absence of juvenile court jurisdiction. *See Dept. of Human Services v. R. D.*, 316 Or App 254, 256, 502 P3d 1183 (2021) ("A child is endangered if the child is exposed to conditions or circumstances that present a current threat of serious loss or injury." (Internal quotation marks omitted.)).

In response, DHS argues that "in addition to father's conduct presenting a threat of harm, his ongoing criminal charges and the impact it had on his residence and ability to contact the children contributed to or enhanced the already existing harm and prevented him from being a resource for [A]." DHS relies on evidence in the record that father initially had a "no contact" order that prevented him from having contact with E, siblings, or mother, but acknowledges that father's release agreement from shortly before the dependency hearing only prohibited him from having contact with E. In addition, DHS argues that father was staying with friends and did not provide an address to DHS, and also that he did not present a plan to care for A.[3]

We agree with father that the evidence in the record is insufficient to support the juvenile court's finding that the pending criminal charges involving E caused father to be unavailable as a custodial resource for A. Our conclusion is a narrow one. There is sufficient evidence in the record to determine that father's conduct presented a threat of harm for all of the children, which relates to other jurisdictional

---

[2] Mother does not specifically address allegation 3G, but generally asserts that the juvenile court erred by determining that A was within the juvenile court's jurisdiction based on each of the seven adjudicated allegations, which includes 3G.

[3] Mother and father lived together prior to father's arrest. Mother continued to live in the townhouse they previously shared. Father testified at the hearing that he was currently residing at his "mother's address" and that he did not have a current phone number.

bases, and there is evidence in the record that father's incarceration prior to his release and the pending charges prevented him from participating in services; however, the record lacks evidence that the fact that there were pending charges made father unavailable as a custodial resource. *See Dept. of Human Services v. L. L. S.*, 290 Or App 132, 139, 413 P3d 1005 (2018) (acknowledging that typically the risk of harm posed by a parent's incarceration is that no one is available to care for the child). Here, although father may not be a custodial resource for other reasons, the pending charges themselves do not make him physically unavailable in the sense that incarceration would.[4] Under the circumstances of this case, the juvenile court erred in taking jurisdiction over A based on allegation 3G. Accordingly, we reverse and remand the jurisdictional judgment in Case No. 22JU00073 for the juvenile court to enter a judgment establishing jurisdiction over A based on allegations 3B, 3C, 3D, 3E, 3F, and 3H, but omitting allegation 3G as a ground for jurisdiction. We affirm the judgments regarding the other three children.

In Case No. 22JU00073, reversed and remanded for entry of a judgment omitting allegation 3G as a basis for jurisdiction; otherwise affirmed. In Case Nos. 21JU02750, 21JU02751, and 21JU02752, affirmed.

---

[4] We also note that there is no evidence in the record that, as of the time of the hearing, the pending charges prevented father from having contact with A—in fact, the record contains evidence that father had had a supervised visit with A.