No. 11 January 4, 2024 127

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of G. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

G. F.,
*Respondent,*
*v.*
C. F.,
*Appellant.*

Deschutes County Circuit Court
21JU05886; A181621

Michelle A. McIver, Judge.

Submitted December 5, 2023.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena Stross, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

G. Aron Perez-Selsky filed the brief for respondent G. F.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Mother appeals a juvenile court judgment granting dependency jurisdiction over her one-year-old son, G. Mother raises six assignments of error on appeal. In her first five assignments of error, mother contends that the juvenile court erred in ruling that G was within its jurisdiction on five of six bases alleged by Department of Human Services (DHS): that mother's parenting of G was (1) impaired by mother's substance abuse; (2) impaired by mother's mental health; (3) interfered with by mother's chaotic lifestyle; (4) interfered with by mother's pattern of unsafe relationships; and (5) interfered with by mother's failure to keep her home free of domestic violence. In her sixth assignment of error, mother contends that the juvenile court erred in ruling that G was within its jurisdiction based on all five challenged bases together. Mother advances a combined argument for all six assignments of error, contending that DHS did not meet its burden to prove the allegations against her. Mother further argues that, even if DHS did meet its burden of proof, DHS failed to establish a nexus between mother's alleged parental deficits and any current substantial risk of injury or harm to G. The evidence in the record is legally sufficient to support the juvenile court's determinations, and we affirm the juvenile court's judgment of jurisdiction asserting jurisdiction over G.

Mother does not request *de novo* review, and this case is not exceptional such that we should exercise discretion to engage in *de novo* review. ORS 19.415(3)(b); ORAP 5.40(8)(c). Therefore, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. R. D.*, 316 Or App 254, 256, 502 P3d 1183 (2021) (internal quotation marks omitted).

In order to establish dependency jurisdiction over a child, DHS has the burden to show, "by a preponderance of competent evidence," ORS 419B.310(3)(a)(A), that there is a threat of serious loss or injury to the child, *Dept. of Human Services v. A. L.*, 268 Or App 391, 397, 342 P3d 174

(2015); that the threat is current and nonspeculative, *Dept. of Human Services v. F. Y. D.*, 302 Or App 9, 19, 459 P3d 947 (2020); that there is a reasonable likelihood that the threat will be realized, *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011); and that there is a nexus between the allegedly risk-causing conduct and the harm to the child, *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013). The juvenile court's inquiry centers "on the *child's* conditions or circumstances at the time of the hearing and whether the totality of those circumstances demonstrates a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 715, 425 P3d 775 (2018) (emphasis in original; internal quotation marks omitted).

Here, there is legally sufficient evidence in the record to support the juvenile court's determination on each of the allegations against mother and to support the determination that the circumstances together create a risk of harm to G. The evidence in the record—including that mother's reporting to mental health providers about her most recent substance use was internally inconsistent and also inconsistent with her testimony at the hearing and that mother did not engage in treatment, as well as the symptoms of methamphetamine withdrawal that mother displayed at trial—is legally sufficient to support the juvenile court's determination that "there is more than an inference of use at this time"; meaning that the risks to G arising from mother's substance abuse were current. Mother also testified that she had not participated in, and did not intend to participate in, therapeutic care from mental health providers. Evidence in the record, in the form of testimony by mother and other witnesses, indicates that mother had on-and-off, dangerous relationships with multiple different former partners, who were habitual drug users and who had created dangerous situations for mother and G in the past. Mother testified that she nevertheless intended to keep at least one of those partners in her and G's lives, despite having a restraining order against that individual. The evidence in the record is legally sufficient to support the juvenile court's determination that the risks to G, arising from mother's mental health issues, chaotic lifestyle, unsafe relationships, and failure to

avoid domestic violence in her home, were current at the time of the jurisdictional trial.

The evidence in the record also supports the juvenile court's determination that those conditions impaired and interfered with mother's ability to safely parent G and would cause a current and nonspeculative risk of serious harm to G if G were returned to mother's care. One of mother's mental health providers testified that mother had "low insight" as to the nature and impact of her substance abuse on her life, relationships, and parenting of G. In her testimony, mother consistently expressed resistance to addressing her mental health issues through recommended therapeutic treatment. That evidence, coupled with the evidence noted above related to substance abuse, supports the juvenile court's determination that mother had not successfully mitigated risks to G arising from mother's substance abuse and mental health issues, which impaired mother's ability to create a safe environment for G and to adequately respond to his needs as a one-year-old. The record also supports the juvenile court's determinations related to mother's chaotic lifestyle, unsafe relationships, and failure to avoid domestic violence in her home, in that mother's continued relationships or periodic association with former partners—despite their history of drug use, domestic violence, and restraining order violations—created an ongoing and substantial risk that G would be harmed by exposure to drugs and violence.

In sum, there is legally sufficient evidence in the record to support the juvenile court's determination that mother's substance abuse, mental health, chaotic lifestyle, pattern of unsafe relationships, and failure to keep her home free of domestic violence were current at the time of the jurisdictional hearing; that those conditions impaired or interfered with mother's ability to safely parent G; and that those conditions created a current and substantial risk of serious loss or injury to G. Thus, we reject mother's six assignments of error and affirm the juvenile court's judgment of jurisdiction asserting jurisdiction over G.

Affirmed.