656                    April 9, 2025                    No. 326

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. F. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. M.,
*Appellant.*

Jackson County Circuit Court
24JU00721; A185313 (Control)

In the Matter of F. W. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. M.,
*Appellant.*

Jackson County Circuit Court
24JU00722; A185314

In the Matter of Z. I. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. M.,
*Appellant.*

Jackson County Circuit Court
24JU00724; A185315

Charles G. Kochlacs, Judge.

Argued and submitted February 26, 2025.

Holly Telerant, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed.

**PAGÁN, J.**

In this consolidated juvenile dependency case, mother appeals from a judgement asserting dependency jurisdiction over her three children. On appeal, mother raises nine assignments of error, which boil down to one issue: at the time of the jurisdictional trial, was there a nonspeculative risk of loss or injury to the children? We conclude that the record was insufficient to support a finding that there was a nonspeculative risk of loss or injury at the time of trial, because the children had been placed with grandmother, and there was insufficient evidence to show that mother would interfere with the placement, or that grandmother was an unfit alternative caregiver. We reverse.

Absent *de novo* review, which mother does not seek, "we review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). "Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that the juvenile court decided the facts consistently with its ultimate legal conclusion." *Id.* at 345. "Ultimately, we review the facts found by the juvenile court to determine whether they are supported by any evidence and then to determine if, as a matter of law, those facts provide a basis for the juvenile court's change of the permanency plan * * *." *Id.* We address the facts with the standard of review in mind.

In 2023, mother was given sole custody of her three children after divorcing father; father received supervised visitation. In January 2024, a neighbor called law enforcement because she had seen one of the children playing outside in the cold without clothes on. When law enforcement responded, they found that mother's house was in a state of serious uncleanliness, with feces strewn throughout the house and on furniture, and trash piled throughout the house, among other issues. Three lay witnesses noted that mother appeared to be having mental health problems, although no expert testified as to mother's mental health.

DHS removed the children and placed them with their maternal grandmother.

Grandmother had previously supported mother by providing childcare and helping with cleaning the household but had not been able to do so in the months leading up to the removal because she was fostering other children. Grandmother had visited mother ten days before the removal and testified at trial that the house had been "pretty bad" at that time. Grandmother continued to be a resource parent to mother's children in the five months leading up to the jurisdictional trial. Mother regularly attended visits in the community with the children and called them on the phone under grandmother's supervision, both without issue.

At a jurisdictional trial in July 2024, mother testified that, even if the state was no longer involved, she would leave the children under grandmother's care. Mother also acknowledged that the January incident was the "worst moment" she had had as a parent. The juvenile court entered a judgment establishing jurisdiction with respect to mother[1] on two bases,[2] which mother now appeals from.

On appeal, mother argues that whatever her failings might have been, they have been mitigated by the children's placement with grandmother, and thus there was not a reasonable likelihood of harm at the time of the jurisdictional trial.

The juvenile court has exclusive jurisdiction over cases involving minors "[w]hose condition or circumstances

---

[1] The court also took jurisdiction with respect to father as the result of a separate admission, which is not at issue in this appeal.

[2] The exact bases for jurisdiction are in dispute. The court's oral ruling and the judgment are contradictory in that they state different jurisdictional bases. The written judgment took jurisdiction based on allegation 4C: "The mother's chaotic lifestyle interferes with her ability to safely parent the child;" and on allegation 4E: "The mother's mental health problems interfere with her ability to safely parent the child." But in the oral ruling, the court stated that it would *not* take jurisdiction on 4C and would instead take jurisdiction on allegation 4D: that "mother does not understand the basic needs of her child and lacks skills necessary to safely parent the child." DHS suggests clerical error as the cause; mother argues that the written judgment should control. At any rate, we conclude that any conflict between the judgment and the oral ruling does not affect our analysis, because the question is whether the placement of the children with grandmother removed the children from harm.

are such as to endanger the welfare of the person or of others." ORS 419B.100(1)(c). Jurisdiction is appropriate when "under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010). "DHS has the burden to prove that there is 'a nexus between the allegedly risk-causing conduct and the harm to the child,' and that the risk of harm is nonspeculative and present 'at the time of the hearing.'" *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 403, 328 P3d 769 (2014) (quoting *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013)). Such harm must present a "threat of serious loss or injury." *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011).

When a parent entrusts the primary care of their child to another caregiver (typically a family member) who does not themselves pose a current threat of harm to the child, the juvenile court lacks jurisdiction on the basis of the parent's parenting deficits. *See Dept. of Human Services v. A. L.*, 268 Or App 391, 398, 342 P3d 174 (2015) (placement with grandparents, as safe alternative caregivers, meant there was insufficient evidence to support jurisdiction); *Dept. of Human Services v. A. B.*, 271 Or App 354, 371, 350 P3d 558 (2015) (overturning prior case law concluding that the juvenile court had jurisdiction in any case where a child had been placed with a non-parental caregiver). Mere speculation that a parent will attempt to interfere with a caregiver is an insufficient basis for jurisdiction; DHS bears the burden of proof to show that a parent is likely to try to usurp primary parenting responsibilities from the alternative caregiver, such that jurisdiction remains necessary. *See A. B.*, 271 Or App at 373.

The record is clear, and the parties do not dispute, that at the time of removal, mother's issues were severe. But the question is whether the evidence supports that those risks existed at the time of the jurisdictional trial. At the time of the jurisdictional trial, the children were in the care of an alternative caregiver, in the vein of *A. L.* and *A. B.*: grandmother. Grandmother had been the parenting resource since the removal, and the children remained

with grandmother without incident through to the jurisdictional trial. Despite that arrangement, DHS argues that the record supported a finding of jurisdiction for two reasons: first, evidence indicated that mother may try to interfere with the children while they are under grandmother's care, and second, that grandmother failed to grasp the seriousness of mother's issues.

We begin with interference. DHS argues that the evidence indicated that mother was upset with the placement with grandmother, and combined with her mental health issues, that may lead her to interfere with the children's placement. In support of this, DHS points to evidence of a statement mother made during the removal, which was captured on an officer's bodycam. DHS told mother that the children would be placed with grandmother, and mother responded by implying that grandmother's husband (step-grandfather) would abuse the children. No other evidence was presented that step-grandfather ever had been abusive or might be abusive. In contrast, mother's trial testimony was that she was okay with leaving her children with grandmother and step-grandfather, and that she would not go get the children. Evidence was also submitted that in the five months between removal and the jurisdictional trial, mother made no attempts to interfere with the children's placement despite repeated opportunities to do so.[3] While mother may have been upset at the time of the removal (which inherently involves heightened emotions), there was insufficient evidence at the time of the jurisdictional trial to support a finding that mother would try to interfere with the placement. *See A. B.*, 271 Or App at 373.

DHS next refers to evidence in the record that grandmother was not aware of the crisis that mother was going through, and the court's statement that it was not persuaded that grandmother would protect the children from mother, although the court acknowledged that grandmother was the current resource parent. DHS argues that

---

[3] DHS argues that mother was unhappy with the placement because in March she asked DHS to examine the children to ensure that no sexual abuse was happening. But the caseworker who testified to this incident stated that this request occurred directly after mother learned that the children had had contact with the children's father, not step-grandfather. Mother's care for her children's safety with regards to father is not an indication that she would intervene with grandmother if left unsupervised by the court.

this point was supported by grandmother's visit to mother's house ten days before the removal, which it argues is proof that grandmother was aware of the scope of mother's problems, but failed to grasp or fix them, and in turn may not recognize them in the future, thus supporting a conclusion that the children faced a reasonable likelihood of harm.

The record indicated that grandmother had indeed visited the house ten days prior to removal. At trial, grandmother acknowledged that the condition of the house had been "pretty bad," but also admitted some surprise at learning the full scope of mother's issues at the removal. Among competing inferences, the trial court could have found that grandmother did not grasp the full extent of mother's crisis. *N. S.*, 246 Or App at 345.

But that finding is insufficient to support the legal conclusion that grandmother would not protect the children (*i.e.*, that she is an unfit alternative caregiver), such that jurisdiction is necessary. The fitness of an alternative caregiver is subject to the same standards as the fitness of a parent. *Cf. A. L.*, 268 Or App at 398 (grandparents were fit alternative caregivers, despite recent indictments on racketeering and marijuana charges, and allegedly living in a drug house, because there was no nexus between the alleged wrongful conduct and the welfare of the children). No other evidence was presented of grandmother's unfitness, and indeed the juvenile court did not remove the children from grandmother's care. That in a brief visit she failed to predict that in ten days her daughter would enter a state of crisis does not legally disqualify her from being a fit alternative caregiver. The record does not support the speculation that grandmother's failure to intervene or report mother ten days prior to removal indicates that in the future she could be an unsafe caregiver.

We do not suggest that every family placement is grounds to dismiss jurisdiction. *See Dept. of Human Services v. S. J.*, 329 Or App 723, 726, 542 P3d 927 (2023) (while children had been placed with the mother's sister, the mother had not herself entrusted the children to the sister, and the totality of the circumstances indicated that the mother did not understand and would not respect the placement).

But under the circumstances present here, the children had been placed with an able family member, the danger to them had ended, mother respected the placement, and the situation was stable. At that point, without a contemporaneous threat to the children, the nature of the court's jurisdiction becomes a sort of "dependency probation" that is not supported by our statutes.

Reversed.