158 June 4, 2025 No. 513

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. P.,
*Appellant.*

Clackamas County Circuit Court
24JU01576; A185671

Todd L. Van Rysselberghe, Judge.

Submitted April 30, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Kyle Sessions, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In this juvenile dependency case, father appeals from the juvenile court's judgment asserting jurisdiction over his child A based, in part, on father's mental health issues and pattern of impulsive behavior.[1] Father raises three assignments of error, all of which reduce to the argument that the Oregon Department of Human Services (ODHS) failed to prove that father exposed A to a nonspeculative threat of serious loss or injury as a result of father's mental health issues and impulsivity. We affirm.

Absent *de novo* review, which father does not seek, when reviewing the juvenile court's assertion of jurisdiction, "[w]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit the outcome." *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 709, 425 P3d 775 (2018). Juvenile court dependency jurisdiction is authorized under ORS 419B.100(1)(c) when a child's condition and circumstances expose them to a current threat of serious loss or injury that will likely be realized. *Dept. of Human Services v. A. L.*, 268 Or App 391, 397-98, 342 P3d 174 (2015). ODHS bears the burden of proving a nexus between the allegedly risk-causing conduct and probable harm to the child. *Id.* at 398.

We conclude that the record before the juvenile court at the July 2024 jurisdiction trial was sufficient to support its determination that then-four-month-old A would be exposed to a nonspeculative threat of serious loss or injury without dependency jurisdiction.

Preceding A's birth, ODHS and the juvenile court had already been involved with father's family for about two years, in relation to parents' older child J and two of mother's other children. Father's relationship with ODHS was contentious and combative, with father frequently sending rambling, hostile, and threatening messages to ODHS staff. The ODHS caseworker believed that father did not perceive

---

[1] Mother did not appeal the jurisdiction judgment and is not a party to this appeal.

reality like others, that he did not recognize the concerns that DHS had presented, and that he was unable to discuss his children's needs.

A was born prematurely, in March 2024, and was admitted to the neonatal intensive care unit (NICU) and placed on a CPAP machine to address his respiratory distress. While spending time with A in the NICU, father's behavior was "unusual," with him making "strange hand and body movements" and talking rapidly to himself, the wall, or someone who was not there. When a doctor and nurses explained that A was in respiratory distress and needed the CPAP machine to assist him with breathing, father did not acknowledge what was being said and appeared to not understand, continuing to insist that the CPAP machine was not safe. Father attempted to remove the CPAP machine, but hospital staff stopped him, determined that he should not be left alone with A, and reported the incident to ODHS. Father and mother did not visit A after he was discharged from the hospital into ODHS's temporary custody in April 2024.

There is also evidence in the record that the apartment where father and mother had been living was unsafe. There was garbage throughout the apartment, including rotting food and used feminine hygiene products, and a thick layer of sawdust from the pallets they broke down and burned for heat covered much of the kitchen.

At the jurisdiction trial, father frequently interrupted the proceedings, reacting to arguments from the parties and the testimony of witnesses and speaking to himself or to auditory hallucinations. Father also threatened ODHS's attorney and attempted to intimidate witnesses and the juvenile court judge.

The record before the juvenile court demonstrated that father continued to experience persistent mental health issues and impulsivity that posed a serious risk to A, who, at four months old, was entirely dependent on his adult caregivers. Those risks include that father would expose A to living conditions that endangered A's health and safety and that father would not ensure that A received appropriate medical

care, particularly in emergency situations. Moreover, given father's inability or unwillingness to recognize those risks and seek to remedy the conditions giving rise to them, those risks were likely to be realized.

Affirmed.